IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| MICHAEL WOLFROM, | ) |
| | ) |
| Plaintiff, | ) |
| | ) C.A. No: |
| v. | ) |
| | ) JURY TRIAL DEMANDED |
| CITY OF WILMINGTON, | ) |
| | ) |
| Defendant. | ) |

## COMPLAINT

### INTRODUCTION

1. Plaintiff, Michael Wolfrom ("Plaintiff"), files this action against Defendant, City of Wilmington ("Defendant" or "City"), for compensatory damages and punitive damages for violations of the Americans with Disabilities Act and Breach of the Covenant of Good Faith and Fair Dealing.

### NATURE OF THE ACTION

2. Defendant engaged in disability discrimination and wrongfully discriminated against Plaintiff by virtue of his perceived disability in violation of the Americans with Disabilities Act of 1990 ("ADA") including changes made by the ADA Amendments Act of 2008 which became effective on January 1, 2009.

3. Defendant breached the implied covenant of good faith and fair dealing which, under Delaware law, inheres in every contract.

### JURISDICTION

4. This Court has federal question jurisdiction over this cause of action pursuant to 28 U.S. Code § 1331.

5. This Court has supplemental jurisdiction over all state causes of action pursuant to 28 U.S.C. §1367.

6. Venue is proper in this district pursuant to 29 U.S.C. § 1331, as well as 28 U.S.C. § 1391(b).

## PARTIES

7. Plaintiff, Michael Wolfrom, ("Plaintiff), is a resident of New Castle County, Delaware.

8. Defendant, the City of Wilmington, is a municipal government existing under the laws of the State of Delaware pursuant to 40 Del. Laws, Chapter 179, as amended by 46 Del. Laws, Chapter 236, within the Wilmington City Code Art. I, § I-100.

## ADMINISTRATIVE PROCESS

9. On July 9, 2019, Plaintiff filed a timely Charge of Discrimination with the Delaware Department of Labor ("DDOL") alleging disability discrimination against Defendant City of Wilmington.

10. On February 19, 2020, Plaintiff received a Right to Sue from the Equal Employment Opportunity Commission attached hereto as Exhibit A.

11. Plaintiff has filed this action under the Americans with Disabilities Act within ninety (90) days after receipt of his Right to Sue Notice from the Equal Employment Opportunity Commission.

12. Plaintiff has satisfied all statutory prerequisites prior to filing this action against Defendant.

## **FACTS**

13. On August 30, 2017, Plaintiff submitted an employment application for the position of police officer with the City of Wilmington, Wilmington Police Department.

14. Wilmington Police Department's employment application required Plaintiff to provide an in-depth detailed list of his medical conditions. Specifically, Plaintiff was required to "List all psychiatrists or psychologists that you have been treated by or seen and the reason for treatment." Wilmington Police Department's application also asked Plaintiff "Have you ever been medically disqualified from employment and the reason for the disqualification?"

15. Plaintiff, eager to work as a police officer, provided his medical history on the application and disclosed he has Hypertension and General Anxiety Disorder (GAD).

16. The medical information Plaintiff provided to Defendant evidences Plaintiff does not have any disabilities. The diagnoses Plaintiff listed do not prevent or limit his ability to successfully perform the duties of a Wilmington Police Officer.

17. On September 14, 2017, Plaintiff attended an Applicant Orientation Meeting.

18. On September 23, 2017, Plaintiff took a Physical Ability Test to assess his physical condition. Plaintiff successfully met and passed this test.

19. On October 7, 2017, Plaintiff passed the mandatory Written Examination.

20. On November 3, 2017, Plaintiff successfully participated in an Oral Board Panel Interview.

21. Plaintiff was then required to undergo a polygraph examination. This polygraph examination was administered prior to extending a conditional offer of employment.

22. Plaintiff was required to complete and pass the polygraph examination in order to move on to the next steps of the hiring process.

23. Prior to the polygraph examination, Plaintiff was required to complete a Personal History Statement which required Plaintiff to again list his medical history. The Personal History Statement required Plaintiff to disclose if (1) if he had ever been treated by a psychologist or psychiatrist and the reason for treatment, and (2) if he had ever been medically disqualified from employment and the reason for the disqualification.

24. Plaintiff was forced to disclose he was treating with a psychologist and that he had the following current or past medical conditions: broken bones, a back injury, a knee injury, bad vision and Critical Incident Stress Management. Plaintiff submitted his Personal History Statement on or about November 6, 2017.

25. Plaintiff was concerned as he felt as a result of providing all of his medical history, it would be predetermined he may not be healthy enough or not physically or mentally able to perform the functions of a police officer.

26. Plaintiff was scheduled for a mandatory polygraph examination on November 30, 2017.

27. Prior to the polygraph examination, Plaintiff was required to undergo a comprehensive interview with the polygraph examiner to discuss the information contained in his Personal History Statement, including the unlawfully solicited medical questions. Plaintiff was interviewed by Sergeant Scott Chaffin, a certified polygraph examiner.

28. As part of the interview, Sergeant Chaffin questioned Plaintiff about the contents of his Personal History Statement. Sergeant Chaffin asked Plaintiff for a list of prescription medications he was on, to which Plaintiff was forced to disclose he was on medication for hypertension and anxiety.

29. Plaintiff was also questioned about his employment history. In particular, Plaintiff was asked questions regarding the circumstances surrounding his resignation from the Newark Police Department.

30. Prior to Plaintiff's employment application to Wilmington Police Department, Plaintiff was employed as a police officer within the Newark Police Department.

31. As part of Plaintiff's resignation, a confidential non-disclosure agreement was entered into between Plaintiff and the Newark Police Department.

32. Plaintiff stated to the polygraph examiner he was unable to speak about his employment with Newark Police Department, as he was bound by a legally binding confidential non-disclosure settlement.

33. Plaintiff further advised the polygraph examiner his GAD and hypertension did not prevent or limit his abilities to perform as a police officer and that he can successfully perform the duties of a police officer without any accommodations.

34. Defendant stated to Plaintiff the polygraph examination could not be completed because it would have "indicated deception."

35. Plaintiff then immediately told Defendant he specifically provided references for Defendant to contact because these references were not bound by the confidentiality agreement and could speak to his employment at Newark Police Department.

36. Defendant stopped the interview, cancelled the polygraph examination and failed to contact any of Plaintiff's employment references.

37. Plaintiff was then contacted by Master Sergeant Janvier who stated due to a non-disclosure agreement in place from Newark Police Department, they could not proceed with a polygraph examination and background investigation.

38. Prior to Plaintiff's application with the City of Wilmington, Plaintiff successfully completed a polygraph examination for Delaware State Police, Capital Police, West Chester Police and Lower Merion Township without issues.

39. Plaintiff received a letter from Delaware State Police dated January 30, 2017, stating he successfully completed the polygraph examination and was moving on to the background stage of the hiring process.

40. On or about December 9, 2017, Plaintiff received a letter from Defendant informing him he did not pass the polygraph/background investigation phase of the hiring process, despite the polygraph not being completed nor his background references contacted.

## COUNT I

### Discrimination in Violation of the Americans with Disabilities Act of 1990 and the Americans with Disabilities Act Amendment Acts

41. The allegations of Paragraphs 1 through 40 are incorporated by reference as if fully reinstated herein.

42. Defendant City of Wilmington employs fifteen or more employees and is an "Employer" as defined by 42 U.S.C. § 12111(3).

43. Plaintiff is a "Qualified Individual" as defined by 42 U.S.C. § 12111(8).

44. Plaintiff received a Right to Sue Letter from the Equal Employment Opportunity Commission on February 19, 2020. Plaintiff has satisfied all statutory perquisites for filing this action.

45. The Americans with Disabilities Act states "no covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a).

46. A "disability" is defined by the ADA as: "(A) a physical or mental impairment that substantially limits one or more of the major life activities of an individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2).

47. Before an offer of employment is extended, an employer may not ask a job applicant to undergo a medical examination or inquire as to whether he "is an individual with a disability." 42 U.S.C. § 12112(d)(2)(A).

48. Wilmington Police Department's employment application as well as Personal History Statement required Plaintiff to provide a detailed list of his medical conditions in contravention of the Americans with Disabilities Act.

49. The medical information Plaintiff was forced to provide proves Plaintiff does not have any disabilities. The diagnoses Plaintiff listed do not prevent or limit his ability to successfully perform the duties of a police officer.

50. Plaintiff was qualified and able to perform the essential functions of a police officer with the City of Wilmington without any accommodations.

51. The medical information elicited on Defendant's employment application and Defendant's personal history statement were improperly used as a basis to deny Plaintiff's employment because of his medical conditions.

52. Defendant regarded Plaintiff as being disabled as defined in the ADA. 42 U.S.C. § 12102(2)(C).

53. Defendant wrongfully denied Plaintiff employment based on a perceived disability.

54. Plaintiff suffered an injury in fact, specifically that Defendant did not hire Plaintiff because of his responses to the impermissible questions on Wilmington Police Department's employment application as well as Personal History Statement.

55. As a direct result of Defendant's actions, Plaintiff has suffered physical, emotional and economic damage as a result of the aforementioned conduct.

56. The effect of the practices complained of in the paragraphs above has deprived Plaintiff of equal employment opportunities.

## COUNT II

### Breach of the Implied Covenant of Good Faith and Fair Dealing

57. The allegations of Paragraphs 1 through 56 are incorporated by reference as if fully reinstated herein.

58. Every contract, whether oral or written, express or implied, has a covenant to the effect that neither party to the contract will do anything in bad faith to prevent the other party to the contract from enjoying the benefits of the contract. This is known as the implied covenant of good faith and fair dealing, and this covenant applies to the employment agreement between Plaintiff and Defendant.

59. Defendant breached this covenant by intentionally discriminating against Plaintiff because of his perceived disability.

60. Defendant additionally breached this covenant by manufacturing a false reason for denying Plaintiff employment, namely stating Plaintiff was not hired because he did not pass the polygraph examination.

61. Defendant's breach of the implied covenant of good faith and fair dealing has damaged Plaintiff, financially and professionally.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests this Court order the following relief in favor of Plaintiff:

A. Declare the conduct by Defendant to be in violation of Plaintiff's statutory rights and common law rights.

B. Awarding Plaintiff any and all consequential damages, including, but not limited to lost wages, salary, employment benefits, back pay, front pay, pre and post judgement interest, equity, liquidated damages, and any or all pecuniary damages.

C. Awarding Plaintiff all compensation due as a result of Defendant's violations herein.

D. Awarding Plaintiff punitive damages.

E. Awarding Plaintiff an equal and additional amount as liquidated damages.

F. Awarding Plaintiff costs and reasonable attorney's fees.

G. Awarding Plaintiff pre and post judgment interest at the legal rate.

H. Any and all such other relief as the Court deems appropriate under the circumstances.

**ALLEN & ASSOCIATES**

*/s/ Michele D. Allen*
Michele D. Allen (#4359)
Emily A. Biffen (#6639)
4250 Lancaster Pike Suite 230
Wilmington, DE 19805
302-234-8600
302-234-8602 (fax)
michele@allenlaborlaw.com
emily@allenlaborlaw.com
*Attorneys for Plaintiff*

Dated: May 19, 2020